In The



Court of Appeals



Ninth District of Texas at Beaumont



____________________



NO. 09-05-079 CV


____________________



IN RE HARROLD E. (GENE) WRIGHT







Original Proceeding






MEMORANDUM OPINION (1)


 In this mandamus proceeding, Harrold E. (Gene) Wright challenges an order
compelling production of privileged work product and attorney-client communications to
the real parties in interest, J. Michael Fincher, P.C., J. Michael Fincher, Individually, J.
Benjamin Johnson, Jr., John M. Martineck, Michael Havard, and Provost Umphrey Law
Firm, L.L.P. (collectively, "Johnson/Martineck"). We conclude Wright failed to show
that the trial court clearly abused its discretion in ordering production of the documents
containing work product, but find the record presently before us does not support a finding
that communications directly between Wright and his attorneys are discoverable. Further
proceedings are necessary to determine whether those documents must be produced;
therefore, we conditionally grant the writ of mandamus in part, and direct the trial court
to vacate its order of March 3, 2005. 

 Wright and Johnson/Martineck filed separate suits alleging underpayment of
royalties by oil producers on federal property. As part of an agreement to cooperatively
pursue their qui tam suits under the Federal False Claims Act, (2) Wright and his counsel Pat
S. Holloway, P.C., executed a Multi-Relator/Counsel Agreement ("MRCA") and a Joint
Prosecution Agreement ("JPA") with the real parties in interest and others not involved
in the present litigation. Following the conclusion of the qui tam litigation, Wright filed
the underlying suit for fraud, conversion, breach of contract and breach of fiduciary duty
against the real parties in interest. (3) Prior to the transfer of his portion of the case to
Jefferson County, and over the objection of the Johnson/Martineck parties, Wright
obtained work product documents on the grounds that the work product privilege never
arose due to operation of the MRCA and the JPA. 

 In his mandamus petition, Wright complains he has been misquoted by the real
parties in interest and contends he never took the position that all the defendants' work
product with regard to all issues in the qui tam suit was discoverable. At the discovery
hearing conducted while the case was filed in Denton County, Wright's counsel conceded: 

 There may be a lot of communications between Johnson and Martineck and
their attorneys that, as you said, don't have to do with valuing of the case
that they are going to be entitled to just like there may be communications
between Mr. Wright and Mr. Holloway that we are going to maintain are
privileged because they don't have anything to do with our claims or their
defenses.


Counsel added, "But we are saying we get all of the work product." At that time, Wright
took the position that "[a]ny of their work product, whether it's a draft of a letter or a
memo to the file or correspondence between the attorneys themselves, we were entitled to
from day one and we are entitled to today because the privilege never arose because we
are included in the group that the work product definition encompasses." "'[W]here a
party assumes a certain position in a legal proceeding, and succeeds in maintaining that
position, he may not thereafter, simply because his interests have changed, assume a
contrary position, especially if it be to the prejudice of the party who has acquiesced in the
position formerly taken by him.'" New Hampshire v. Maine, 532 U.S. 742, 749, 121
S.Ct. 1808, 1814, 149 L.Ed.2d 968, 977 (2001) (quoting Davis v. Wakelee, 156 U.S. 680,
689, 15 S.Ct. 555, 39 L.Ed. 578 (1895)). The record before us supports a finding that
Wright took the position that under the MRCA and JPA he was entitled to all of the work
product of the real parties in interest from the qui tam suit, other than communications
directly between the attorney and the client. Therefore, the trial court did not clearly
abuse its discretion in holding the work product documents to be discoverable. 

 The real parties in interest concede that communications involving Wright himself
are not discoverable by virtue of judicial estoppel. To establish their right to obtain access
to direct communications between Wright and his lawyers, the real parties in interest
advance three theories: (1) selective disclosure; (2) offensive use; and (3) the crime-fraud
exception. The trial court's order did not specify the grounds on which it overruled
Wright's objections to the requests for production and granted the motion to compel. 

 Voluntary disclosure of any significant part of privileged information operates to
waive the privilege. Tex. R. Evid. 511. Wright relied upon the testimony of his attorney,
Pat S. Holloway, in several affidavits filed with the various courts. Wright also presented
Holloway for deposition. Although Holloway testified at length about his activities in the
litigation and his interpretation of the MRCA, the real parties in interest have not
specifically identified a selective disclosure of a communication between Wright and
Holloway. The trial court's order cannot be reasonably based on the doctrine of selective
disclosure.

 The offensive use doctrine precludes a litigant from relying on a privilege to shield
himself from discovery when: (1) the party asserting the privilege is seeking affirmative
relief; (2) the privileged information would probably be outcome-determinative; and (3)
there are no other means to obtain the information. Republic Ins. Co. v. Davis, 856
S.W.2d 158, 163 (Tex. 1993). Wright characterizes his opponents' position as requiring
a party who consults a lawyer before entering a contract to place his communications with
his attorney at risk if they later sue for breach of contract. He fails to consider either the
nature of this particular business transaction - joint prosecution of litigation under the
False Claims Act - or the subject of the present litigation. Wright and his attorney are
both plaintiffs in suits for fraud and breach of fiduciary duty. Their knowledge and
reliance are at issue. See Schlumberger Tech. Corp. v. Swanson, 959 S.W.2d 171, 181
(Tex. 1997). Wright contends the documents are not the only means to determine the
intent of the parties to the MRCA, because the parties may take his deposition. If Wright's
cause of action can only be proven - or refuted - with evidence of attorney-client
communications, Wright's deposition testimony will be subject to the same objections as
the request for production of documents. It is evident, however, that the trial court did not
consider the effect of obtaining the work product documents (discussed above) in the third
prong of the offensive use doctrine. If the information sought may be obtained through
production of the work product documents not comprising direct attorney-client
communications, production of direct attorney-client communications would be
inappropriate. 

 The attorney-client privilege does not apply if the lawyer's services were sought to
enable the commission of what the client knew or reasonably should have known to be a
crime or fraud. Tex. R. Evid. 503(d)(1). The relator refers to categories of documents
listed in a proposed order presented by a special master. The proposed order is unsigned,
and we have no formal written findings from the master. The master reported his general
findings to the trial court at the hearing, but did not identify specific documents covered
by the crime-fraud exception. The special master suggested: 

 if you review the documents throughout that were exchanged between Mr.
Wright and his lawyers and between the lawyers referencing what Mr.
Wright said, I think if you review that stream of communication, when you
get right down to the end of it, the fraud exception is met to the attorney-client privilege Crime Fraud Exception. So, I think and my recommendation
is that those documents be produced. 


It is evident from our review of the documents produced in camera that the trial court
could have ruled some but not all of the documents to be within the scope of the Rule 511
exception. If some of the direct attorney-client communications do not fall within the
scope of the crime-fraud exception to the attorney-client privilege, it follows that the trial
court's general order to produce all of the documents presented in camera erroneously
orders disclosure of privileged attorney-client communications. A trial court abuses its
discretion when it erroneously orders production of privileged evidence. Walker v.
Packer, 827 S.W.2d 833, 843 (Tex. 1992). It could be that each document fell within
either the offensive use doctrine, the selective disclosure doctrine, or the crime-fraud
exception, but the trial court has not informed the Court of the basis for its ruling. The
real parties in interest argue a document-by-document assessment by this Court is not
appropriate. We agree. In this case, the trial court's order compelling disclosure cannot
withstand appellate review unless the trial court identifies the basis for ruling on each
document. 

 Finally, Wright complains that he has been required to produce "damage models,"
"non-core work product regarding how the contracts at issue were understood by Wright
and his lawyers," and "how the lawyer for Wright handled statutory attorneys' fees in
other cases." Wright suggests he has no documents responsive to the first two categories
and complains the real parties in interest failed to establish substantial need for the third
category of documents. See Tex. R. Evid. 192.5(b)(2). The real parties in interest
stipulate that the request is directed to one case in particular, United States ex rel. Wright
v. Chevron USA, Inc., filed in the United States District Court for the Eastern District of
Texas, and suggest the third category of documents is relevant to the standard of care on
Wright's cause of action for negligence. If that is the case, the trial court's order should
limit the scope of production accordingly.

 Because we hold that the trial court abused its discretion by ruling that the direct
communications between Wright and his lawyers were subject to compelled production,
without identifying the basis for its ruling on each document, we conditionally grant
mandamus relief. We will issue the writ only if the trial court does not comply with our
Opinion. 

 WRIT GRANTED.


 PER CURIAM



Submitted on March 21, 2005

Opinion Delivered April 21, 2005


Before McKeithen, C.J., Gaultney and Kreger, JJ.
1. Tex. R. App. P. 47.4.
2. 31 U.S.C.A. §§ 3729-33 (West 2003). 
3. Wright originally filed suit in Harris County. After the real parties in interest
prevailed on a motion to transfer the case to Jefferson County, Wright non-suited the
Harris County suit, re-filed in Denton County, and Holloway joined the suit as a plaintiff. 
Wright's suit was eventually severed from Holloway's and transferred to Jefferson County. 
See Fincher v. Wright, 141 S.W.3d 255 (Tex. App.--Fort Worth 2004, orig. proceeding).