IN THE

TENTH COURT OF APPEALS




 
 
 
 
 
 
 


 



No. 10-06-00125-CV

 

Dale Van Es, d/b/a Van Es Dairy,

                                                                                    Appellant

 v.

 

Danny and Pam Frazier,

                                                                                    Appellees

 

 

 



From the 413th District Court

Johnson County, Texas

Trial Court No. C200300114

 



Opinion



 








Danny and Pam Frazier filed suit against Dale Van
Es dba Van Es Dairy seeking injunctive relief and alleging claims of nuisance,
trespass, and negligence.  The trial court denied Van Es’s motion for transfer
of venue and later granted the Fraziers’ motion for “death penalty” sanctions. 
The court granted the Fraziers’ summary judgment motion and, after a trial on
the issue of exemplary damages, signed a final judgment.  Van Es contends in
four issues that: (1) the court abused its discretion by imposing death penalty
sanctions; (2) the court’s award of attorney’s fees is erroneous because the
Fraziers did not request attorney’s fees in their summary judgment motion,
there is no contractual or statutory basis for the award, and there is no
evidence to support the award; (3) there is no evidence to support the award of
exemplary damages; and (4) the court abused its discretion by refusing to grant
his second request to transfer venue.  We will affirm in part and reverse and
remand in part.

Background

The Fraziers sued Van Es and Parker Water Supply
Company after the water supply line to their home ruptured and was allegedly
“contaminated with bovine manure and urine” from Van Es’s dairy.  The Fraziers
alleged that Parker acted with gross negligence in causing the water supply
line to rupture and that the rupture caused a diminution in the value of their
property.  They alleged that bovine waste and odors emanating from Van Es’s
property constituted a nuisance, that Van Es was spreading the bovine waste and
urine in a manner which “encroached” on the Frazier’s property, and that Van Es
made affirmative misrepresentations to obtain a permit from the Texas Natural
Resources Conservation Commission authorizing the expansion of his dairy
operations.  Thus, the Fraziers sought: (1) injunctive relief prohibiting Van
Es from continuing to operate the dairy without a proper permit or to spread
bovine waste in a manner that encroached on the Fraziers’ property; (2) damages
from Parker; and (3) declaratory relief, including attorney’s fees. 

Van Es filed a motion to sever the Fraziers’
claims against him from their claims against Parker and transfer venue of the
claims against him to Hill County.  Van Es alleged that venue was mandatory in Hill County because that is the county of his residence and the Fraziers sought injunctive
relief and because the real property which is the subject of the dispute is
located in Hill County.  See Tex.
Civ. Prac. & Rem. Code Ann. § 15.011 (Vernon 2002), § 65.023 (Vernon 1997).

The court denied Van Es’s motion to transfer venue
in January 2004.  Van Es filed a mandamus proceeding in this Court one year
later seeking review of the venue ruling.  After receiving the Fraziers’
response, this Court summarily denied the mandamus petition.  See In re Van
Es, No. 10-05-012-CV, 2005 WL 762648 (Tex. App.—Waco Mar. 30, 2005, orig.
proceeding) (mem. op.).

In May and August of 2005, the trial court granted
motions for sanctions against Van Es arising from discovery disputes.  The
August sanctions order required Van Es: (1) to produce documents responsive to
the Fraziers’ discovery requests on or before September 12; (2) appear with his
wife for depositions on September 21; and (3) pay $3,000 in monetary sanctions
on or before September 12.  The sanctions order further provided that Van Es’s
pleadings would be struck and he would not be permitted to conduct discovery or
proffer evidence at trial or any hearing unless he complied with each portion
of the sanctions order on or before September 26.

Van Es filed a second mandamus proceeding in this
Court in November 2005 seeking review of the August sanctions order.[1] 
This Court summarily denied Van Es’s second mandamus petition one month later. 
See In re Van Es, No. 10-05-338-CV, 2005 WL 3338926 (Tex. App.—Waco Dec. 7, 2005, orig. proceeding) (mem. op.).

The Fraziers filed a supplemental petition seeking
actual damages for nuisance and trespass and seeking exemplary damages based on
allegations that Van Es acted with malice and with gross negligence.  In an
amended answer, Van Es “renew[ed]” his motion to sever and transfer venue,
presenting the same arguments as before.  In addition, Van Es argued that venue
for the Fraziers’ nuisance and trespass claims is mandatory in Hill County
under section 15.011 of the Civil Practice and Remedies Code because that is
the situs of the real property which the Fraziers allege to have been damaged
by his conduct.  See Tex. Civ.
Prac. & Rem. Code Ann. § 15.011.

The Fraziers settled with Parker and filed a
motion to dismiss their claims against Parker, which the court granted.  They
filed a motion for partial summary judgment regarding their claims against Van
Es.  They alleged in the summary judgment motion that there were no genuine
issues of material fact regarding their claims that Van Es’s actions constitute
a trespass on their property and a nuisance, that Van Es acted with negligence,
and that they suffered damages because of his actions.  The Fraziers did not
request attorney’s fees or offer any summary judgment evidence to support an
award of attorney’s fees.

The trial court signed its final sanctions order
in February 2006, striking Van Es’s pleadings and prohibiting him from
proffering evidence at trial or any hearing.

One month later, the court granted the Fraziers’
motion for partial summary judgment.  The summary judgment order: (1) struck
Van Es’s summary judgment response; (2) awarded the Fraziers actual damages of
$581,793 and attorney’s fees of $121,171; and (3) declared that Van Es’s application
for a dairy permit from TNRCC was void.

The court held a “final hearing” one month after
granting the partial summary judgment.  Van Es did not appear for this
hearing.  At the Fraziers’ request, the court took judicial notice of the
summary judgment evidence and of the testimony they offered at the hearing on
their request for a temporary injunction.  After hearing argument by the
Fraziers’ counsel, the court found that Van Es had acted with gross negligence
and awarded exemplary damages of $250,000.  The court’s final judgment
reiterates the attorney’s fee award set forth in the partial summary judgment.

Venue

Van Es contends in his fourth issue that the court
abused its discretion by refusing to grant his second request to transfer
venue.  According to Van Es, venue was mandatory in Hill County under section
15.011 of the Civil Practice and Remedies Code because the Fraziers sought
recovery of damages to real property.  See Tex. Civ. Prac. & Rem. Code Ann. § 15.011.

The Fraziers expressly sought to recover damages
to real property in their first amended petition, which was filed several
months before the court decided Van Es’s first motion to transfer venue.  Van
Es asserted section 15.011 as one of the grounds for transfer in his first
motion to transfer venue (as amended).

Rule of Civil Procedure 87(5) provides in
pertinent part: 

            If venue has been sustained as against
a motion to transfer, or if an action has been transferred to a proper county
in response to a motion to transfer, then no further motions to transfer shall
be considered regardless of whether the movant was a party to the prior
proceedings or was added as a party subsequent to the venue proceedings, unless
the motion to transfer is based on the grounds that an impartial trial cannot
be had under Rules 257-259 or on the ground of mandatory venue, provided that
such claim was not available to the other movant or movants.

 

Tex. R. Civ. P.  87(5).

            “Thus the general rule is that only
one venue determination may be made in a single proceeding in the same trial
court.”  2 Roy W. McDonald & Elaine A. Grafton Carlson, Texas Civil Practice § 6:48 (2d ed. Supp. 2007); see also Fincher v. Wright,
141 S.W.3d 255, 263-64 (Tex. App.—Fort Worth 2004, no pet.) (once trial court
makes venue determination, Rule 87(5) prohibits subsequent venue determination,
even in subsequent lawsuit involving same parties and claims); In re Shell
Oil Co., 128 S.W.3d 694, 696 (Tex. App.—Beaumont 2004, orig. proceeding)
(once trial court made venue determination, Rule 87(5) prohibited subsequent
venue determination, even after plaintiffs non-suited their case and later
refiled in another county); Marathon Corp. v. Pitzner, 55 S.W.3d 114,
137 n.6 (Tex. App.—Corpus Christi 2001) (under rule 87(5), trial court’s
decision to reconsider venue determination was improper), rev’d on other
grounds, 106 S.W.3d 724 (Tex. 2003) (per curiam).

            Under Rule 87(5), a subsequent motion
to transfer venue asserting a claim of mandatory venue is not permitted unless
that claim “was not available” to the original movant.  See Tex. R. Civ. P. 87(5).

            Here, the Fraziers sought recovery for
damages to real property in their first amended petition and Van Es alleged in
his amended motion to transfer venue that mandatory venue lay in Hill County
under section 15.011 because of the Fraziers’ request for such damages.  The
trial court denied this motion.  Thus, it would have been improper for the
court to make a subsequent venue determination with section 15.011 as the basis
for transfer of venue.  Id.; see also Fincher, 141 S.W.3d
at 263-64; Shell Oil Co., 128 S.W.3d at 696; Marathon Corp., 55
S.W.3d at 137 n.6; McDonald &
Carlson § 6:48.  Accordingly, we overrule Van Es’s fourth issue.

Death Penalty Sanctions

            Van Es contends in his first issue
that the court abused its discretion by imposing death penalty sanctions for
discovery violations.  The Fraziers respond that Van Es has not preserved this
complaint because he did not file a post-trial motion challenging the
imposition of sanctions.

            We disagree with the Fraziers’
assertion.  Rule of Appellate Procedure 33.1(a)(1)(A) states in pertinent part
that, to preserve a complaint for appellate review, the appellant must have
presented “a timely request, objection, or motion that . . . stated the grounds
for the ruling that the complaining party sought.”  Tex. R. App. P. 33.1(a)(1)(A).

            Van Es presented his grounds for opposition
to the Fraziers’ requests for sanctions in written responses and/or in
arguments presented in the hearings on the Fraziers’ requests.  Thus, Van Es
adequately preserved these issues for appellate review.  Cf. Chubb Lloyds
Ins. Co. v. Kizer, 943 S.W.2d 946, 953 (Tex. App.—Fort Worth 1997, writ
denied) (“A point not raised by pleadings, by a motion for new trial, or
otherwise presented to the trial court may not be raised on appeal.”).

            Van Es presents numerous challenges to
the imposition of sanctions, which may be generally grouped within the
following sub-issues:

(1)        whether the court abused its discretion
by imposing sanctions without conducting an evidentiary hearing;

 

(2)              
whether the sanctions can
stand without an evidentiary record to support them; and

 

(3)              
whether the court gave
sufficient consideration to the imposition of lesser sanctions.

 

We address each of these sub-issues in turn.

(1) Evidentiary Hearing

            Van Es cites this Court’s decision in Minns
v. Piotrowski for the proposition “that a trial court is required to hold
an identifiable evidentiary hearing before imposing [a death penalty]
sanction.”  904 S.W.2d 161, 169 (Tex. App.—Waco 1995), writ denied, 917
S.W.2d 796 (Tex. 1996) (per curiam).  He contends that the court did not
conduct such a hearing.

            However, the Supreme Court has more
recently concluded that an “oral hearing” is not required before imposition of discovery
sanctions.

Although either party may request an oral hearing,
Cummings did not do so, and there is no “oral hearing” requirement in the
rules.  Rule 215.3, which authorizes a trial court to impose sanctions, does
require “notice and hearing” before sanctions are imposed.  However, nothing in
the rule indicates that this must be an “oral hearing.”  A “hearing” does not
necessarily contemplate a personal appearance before the court or an oral
presentation to the court.

 

Cire v. Cummings, 134 S.W.3d 835, 843-44 (Tex. 2004) (footnote and citations
omitted).

            While Cire is a decision which
primarily addresses the imposition of death penalty sanctions, the particular
issue of whether an “oral hearing” is required was raised with reference to the
imposition of a monetary sanction by the trial court in an order granting a
motion to compel which predated the trial court’s imposition of death penalty
sanctions.  See id. at 837-38, 843.  Nevertheless, the rationale of Cire
has been extended to determinations of whether to impose death penalty
sanctions.  See Tidrow v. Roth, 189 S.W.3d 408, 413 (Tex. App.—Dallas
2006, no pet.).

            Thus, we conclude that this Court’s
holding in Minns that “an identifiable evidentiary hearing” is required
before the imposition of death penalty sanctions has been effectively
overruled.

(2) Evidentiary Record

            Van Es presents several complaints
which relate to the issue of whether there is an adequate record to support the
imposition of death penalty sanctions.  Van Es argues: 

·       
the Fraziers presented no
evidence at any of the hearings to support the imposition of sanctions;

 

·       
he had inadequate notice of
threatened sanctions because he received two of the trial court’s discovery
orders only shortly before the deadlines imposed in those orders;

 

·       
the trial court failed to
comply with its “oblig[ation] to investigate what caused [Van Es’s]
noncompliance with its prior orders” because such an inquiry would have
revealed:

 

(a) the Fraziers’ discovery requests and the
court’s prior discovery orders were vague because the Fraziers had not amended
their pleadings to seek damages from Van Es and the court’s initial order on
the Fraziers’ motion to compel was never reduced to writing; and

 

(b) the noncompliance was wholly the fault of Van
Es’s counsel and Van Es should not be punished for his counsel’s failure to
comply with the court’s orders; and

 

·       
the Fraziers presented no
evidence that they were prejudiced by Van Es’s failure to respond to the
discovery requests at issue.

 

            The standard of review for an order
imposing discovery sanctions is well established.

            A trial court’s ruling on a motion for
sanctions is reviewed under an abuse of discretion standard.  The test for an
abuse of discretion is not whether, in the opinion of the reviewing court, the
facts present an appropriate case for the trial court’s action, but “whether
the court acted without reference to any guiding rules and principles.”  The
trial court’s ruling should be reversed only if it was arbitrary or
unreasonable.

 

Cire, 134 S.W.3d at 838-39 (quoting Downer v.
Aquamarine Operators, Inc., 701 S.W.2d 238, 241-42 (Tex. 1985)) (other
citation omitted).  We address Van Es’s complaints with this standard in mind.

            The choice of which discovery
sanctions to impose lies within the discretion of the trial court, but any
sanction imposed must be “just.”  Spohn Hosp. v. Mayer, 104 S.W.3d 878,
882 (Tex. 2003) (per curiam) (citing Tex.
R. Civ. P. 215.2(b); TransAmerican Nat. Gas. Corp. v. Powell, 811
S.W.2d 913, 917 (Tex. 1991) (orig. proceeding)); Tidrow, 189 S.W.3d at
412.  For a sanction to be “just,” there must be (1) a direct relationship among
the offensive conduct, the offender, and the sanction imposed, and (2) the
sanction must not be excessive.  Id.

A just sanction must be directed against the abuse
and toward remedying the prejudice caused to the innocent party, and the
sanction should be visited upon the offender.  The trial court must attempt to
determine whether the offensive conduct is attributable to counsel only, to the
party only, or to both.   

            

Spohn Hosp., 104 S.W.3d at 882.

            However, a trial court is not required
to make a specific finding that the party (as opposed to the attorney) abused
the discovery process to impose sanctions.  Am. Flood Research, Inc. v.
Jones, 192 S.W.3d 581, 583 (Tex. 2006) (per curiam).  Rather, the entire
record must be reviewed to determine whether sanctions are warranted.  Id.

Factors other than “evidence” actually introduced
at the sanctions hearing may be justifiably considered by the court in its
decision to impose a sanction.  During appellate review, the entire record,
including the “evidence,” arguments of counsel, the written discovery on file,
and the circumstances surrounding the party’s alleged discovery abuse, must be
examined.

 

U.S.
Fid. & Guar. Co. v. Rossa,
830 S.W.2d 668, 672 (Tex. App.—Waco 1992, writ denied); accord Sherman v.
Triton Energy Corp., 124 S.W.3d 272, 278 (Tex. App.—Dallas 2003, pet.
denied); see also Am. Flood Research, 192 S.W.3d at 583.

(a) Lack of Evidence

            Van Es argues that the Fraziers
presented no “evidence” at any of the hearings to justify the imposition of
sanctions.  However, a trial court may consider factors other than “evidence”
in determining whether to impose a discovery sanction.  Id.  Thus, the
court did not abuse its discretion by imposing sanctions even though the
Fraziers did not formally present “evidence” in the sanctions hearings.

(b) Adequacy of Notice

            Van Es argues that his failure to
comply with the May and August 2005 discovery orders was justified because he
did not receive notice of these orders until shortly before the deadlines
imposed therein.  Nevertheless, even assuming Van Es did not receive the orders
until shortly before these deadlines, the chronological history of the
discovery disputes in this case suggest that this factor does not weigh in his
favor.  See Rossa, 830 S.W.2d at 672 (“the circumstances surrounding the
party’s alleged discovery abuse must be examined”).  Accordingly, we now set
out the pertinent details of the Fraziers’ attempts to obtain discovery from
Van Es and the actions Van Es took in response to those attempts.

            The Fraziers filed a motion to compel
after Van Es failed to produce documents responsive to their second request for
production.  In a response, Van Es argued, among other things, that (1)
production of his financial records was not warranted because the Fraziers did
not seek damages from him in their petition (only injunctive and declaratory
relief) and (2) production of documents relevant to the Fraziers’ nuisance and
trespass claims was not warranted because those claims were barred by
limitations.  At the October 2004 hearing on the motion to compel, the court
heard argument of counsel on these issues and overruled Van Es’s objections.

            Nevertheless, the issue of whether the
Fraziers needed to amend their pleadings to seek damages from Van Es was
discussed throughout the hearing.  The Fraziers’ counsel stated that they would
replead if they needed to, “but we are most certainly seeking monetary damages
against Van Es Dairy.”  The court never ordered the Fraziers to replead, but
the court apparently thought an amendment would be advisable when the court
stated, “[S]ounds like he’s going to cure the damages issues with an amended
petition.”  The court then heard Van Es’s specific objections with respect to
each of the Fraziers’ thirty-five requests for production.  The parties agreed
to time limitations with regard to some of the requests and the court generally
overruled Van Es’s objections with a few exceptions.

            The court ordered Van Es to produce
documentation responsive to the Fraziers’ requests.  However, the court did not
specify a deadline for Van Es’s compliance and did not reduce this ruling to
writing.  Cf. Chapa v. Garcia, 848 S.W.2d 667, 670 n.5 (Tex. 1992) (orig. proceeding) (Doggett, J., concurring) (describing how Supreme Court had
previously ordered trial court “to reduce to writing his oral ruling” on
discovery dispute).

            Nearly sixty days later, the Fraziers’
counsel faxed a letter to Van Es’s counsel advising that the deadline for
production of the requested documents “has long since past” [sic] and demanding
that the documents be produced by December 2, which was two days after the
letter was faxed.  Van Es did not produce the requested documents, so the
Fraziers filed their first motion for sanctions in January 2005.  The motion
was set for hearing on February 15.  However, Van Es had filed his first
mandamus petition with this Court the day before the Fraziers filed their
motion for sanctions, so the hearing was delayed until May 17.

            Van Es did not appear for the May 17
hearing.  After hearing argument of counsel, the court granted the motion.  The
court ordered Van Es to produce the requested documents on or before June 15
and ordered that the depositions of Van Es and his wife be conducted on or before
June 30.  The court further ordered Van Es and his counsel to pay $1,500 in
attorney’s fees as a discovery sanction.  However, this order was not signed
until May 31.

            After Van Es failed to comply with the
May 31 order, the Fraziers filed a second motion for sanctions on July 19. 
This time, Van Es filed a response on August 12, the date of the hearing. 
Among other things, Van Es argued that sanctions were not warranted because: (1)
his duty to respond (per the court’s oral order of October 2004) had not yet
arisen because the Fraziers’ had never amended their pleadings to seek monetary
damages from him; (2) the Fraziers’ claim for injunctive relief was moot
because he had surrendered his TCEQ dairy permit and moved out of state; (3) he
did not receive a copy of the May 31 sanctions order until the second week of
June; and (4) the Fraziers had never issued a deposition notice for him or his
wife.

            Van Es’s counsel made each of these
arguments at the August 12 hearing.  The court rejected them and ordered Van Es
to produce the requested documents within thirty days and pay an additional
$1,500 as a discovery sanction.  The court also ordered that Van Es appear for
deposition within forty-five days.  Finally, the court advised that, if these
orders were not fully complied with, then Van Es’s pleadings would be struck. 
The court’s written order was entered on August 18.[2] 
This order more specifically provided that: (1) Van Es must produce the
requested documents by September 12; (2) Van Es and his wife must appear for
deposition on September 21 and; (3) Van Es’s pleadings would be struck if the
court’s order had not been fully complied with by September 26.

            Van Es only partially complied with
this order, so the Fraziers filed a third motion for sanctions on September
21.  Van Es responded with a motion to stay the trial proceedings pending the
resolution of the second mandamus petition he would later file with this Court. 
Meanwhile, the Fraziers filed their supplemental petition to include a request
for monetary damages from Van Es, and Van Es’s counsel mailed a letter and
affidavit to the trial court informing the court of the extent of his
compliance with the court’s discovery order.  Counsel advised the trial court
of his intent to file the mandamus petition challenging the court’s order and
stated counsel’s belief that the disputed discovery issues “must be resolved
before we can completely comply with the order of August 18, 2005.”  Counsel
also informed the court that neither Van Es nor he had received a copy of the
August 18 order “until the late afternoon of September 12.”

This Court summarily denied Van Es’s mandamus
petition on December 7.  However, Van Es did not make any effort thereafter to
comply with the August 2005 order.  Thus, on February 2, 2006, the trial court
signed its final sanctions order striking Van Es’s pleadings and prohibiting
him from proffering evidence at trial or any hearing.

Van Es seeks to excuse his non-compliance with the
May and August 2005 discovery orders by arguing that he did not receive
sufficient notice of these orders to comply with them.  However, the
chronological history we have just recited suggests at least two reasons why
any delay in notification to Van Es is not a sufficient basis to set aside the
death penalty sanctions: (1) the trial court did not immediately impose death
penalty sanctions when Van Es failed to comply; and (2) despite the additional
time actually available to Van Es for compliance, there is nothing in the
record to indicate that he ever tried to fully or even substantially comply.

First, the trial court did not immediately impose
death penalty sanctions when Van Es failed to comply with either order.  The
May order required Van Es to produce the requested documents and appear for a
deposition by certain dates.  After these deadlines had passed with no response
from Van Es, the Fraziers filed their second motion for sanctions.  The August
order was entered in response to this second motion.  Again, however, the
August order did not strike Van Es’s pleadings.  Rather, it required Van Es to
provide discovery responses and appear for his deposition.  It concluded by
advising that Van Es’s pleadings would be struck if he failed to comply. 
In response, Van Es advised that he was seeking mandamus relief in this Court
to challenge the August sanctions order.  Van Es asked the trial court to stay
further proceedings pending resolution of the mandamus proceedings in this
Court.  Although the trial court never formally granted his stay request, that
request was effectively granted because the trial court took no further action
with regard to Van Es until two months after this Court denied his mandamus
petition.

            The trial court signed its first
sanctions order on May 31.  However, the court did not impose death penalty
sanctions until more than eight months later.  Therefore, even assuming Van Es
did not receive copies of the May and August sanctions orders until shortly
before the deadlines imposed in those orders, the trial court would not have
abused its discretion to conclude that Van Es had ample time for compliance
even after the deadlines set by those orders. 

            And second, despite the additional
time available to Van Es for compliance, Van Es made only modest efforts to
comply and frequently engaged in dilatory tactics in an apparent effort to
avoid complying.  Van Es fully aired his objections to the Fraziers’ discovery
requests on several occasions, and the trial court rejected them.  If the trial
court’s rulings were erroneous, they were subject to review in this Court. 
Nevertheless, after repeatedly receiving adverse rulings on these discovery
issues, Van Es still failed to comply.  Therefore, even assuming Van Es did not
receive copies of the May and August sanctions orders until shortly before the
deadlines imposed, the trial court would not have abused its discretion to
conclude that Van Es never intended to comply with those orders.

(c) Trial Court’s Obligation to Investigate
Reasons for Non-Compliance

            Van Es next argues that trial court
failed to comply with its “oblig[ation] to investigate what caused [his]
noncompliance with its prior orders” because such an inquiry would have
revealed: (a) the Fraziers’ had failed to amend their pleadings to seek damages
from Van Es as per the discussion of the parties and the court in the first
discovery hearing; and (b) the noncompliance was wholly the fault of Van Es’s
counsel and Van Es should not be punished for his counsel’s failure to comply
with the court’s orders.

            These arguments focus primarily on
whether the sanction imposed is “just.”  See Spohn Hosp., 104 S.W.3d at
882.  To be “just,” the sanction must be “directed against the abuse” and
“visited upon the offender.”  Id.  Thus, in the context of discovery
sanctions, the trial court does have an obligation to determine what the “offensive
conduct” is and “whether the offensive conduct is attributable to counsel only,
to the party only, or to both.”  Id.  This determination is made with
reference to the entire record, and no specific findings are required.  See
Am. Flood Research, 192 S.W.3d at 583.

            Clearly, the “offensive conduct” is
Van Es’s failure to fully respond to the Fraziers’ requests for production and
appear for a deposition.  Among other things, Van Es argues that the record
before this Court is inadequate to establish any failure on his part to comply
with his discovery obligations.  We disagree.  In the October 2004 hearing on
the Fraziers’ initial motion to compel production, the parties addressed each
of the thirty-five items contained in the Frazier’s second request for
production.  Van Es’s counsel explained why Van Es had not responded to those
thirty-five items, the court heard his objections, and the court overruled
them.  In the subsequent sanctions hearings, the Fraziers argued that Van Es
had still failed to respond to these requests.  In support of an August 2005
response to the Fraziers’ sanctions motion, Van Es’s counsel provided an
affidavit explaining the extent of Van Es’s compliance with the Fraziers’
discovery requests and the reasons he had failed to full comply.  The affidavit
also included as an attachment Van Es’s October 2003 response to the Fraziers’s
second request for production, which includes a verbatim recital of the
thirty-five production requests.  Finally, in a November 2005 affidavit Van
Es’s counsel fully detailed the extent of Van Es’s compliance.  In this
affidavit, Van Es’s counsel explained that, despite his objections, Van Es had
produced “additional documents,” had paid the $3,000 in attorney’s fees imposed
as discovery sanctions, but had refused to appear for deposition pending the
resolution of his second mandamus proceeding in this Court.

            Conversely, the Fraziers’ third motion
for sanctions identifies with specificity the extent of Van Es’s compliance
with the prior discovery orders and their second request for production.  The
Fraziers also specified in this motion the documents which Van Es had failed to
produce.  Although Van Es contends that he only failed to produce financial
records, the Fraziers’ third motion for sanctions enumerates a lengthy list of
documents which Van Es had failed to produce and which are not financial
records.  Therefore, the trial court would not have abused its discretion in
concluding that Van Es had failed to fully comply with the prior discovery
orders requiring production of documents and his appearance for deposition,
even if his failure to produce “financial records” was not considered.  For
this reason, the fact that the Fraziers failed to file their supplemental
petition expressly seeking monetary damages from Van Es until relatively late
in the trial proceedings is of no moment.

            Van Es also argues that a more
in-depth investigation by the trial court would have led to the determination
that his counsel was solely at fault for the failure to comply with the
discovery requests.  It is true that any discovery sanction must be “visited
upon the offender” and the court must attempt to determine who the true
offender is.  See Spohn Hosp., 104 S.W.3d at 882.  However, “[a] lawyer
cannot shield his client from sanctions; a party must bear some responsibility
for its counsel’s discovery abuses when it is or should be aware of counsel’s
conduct and the violation of the discovery rules.”  Paradigm Oil, Inc. v.
Retamco Operating, Inc., 161 S.W.3d 531, 537 (Tex. App.—San Antonio 2004,
pet. denied) (citing TransAmerican Nat. Gas, 811 S.W.2d at 917).

            In Spohn Hospital, the Supreme Court reversed a sanctions order because “the record contains no
evidence that the sanctions were ‘visited on the offender.’  In fact, neither
the trial court nor the court of appeals discusses whether counsel or their
clients were responsible for the discovery abuse.”  Id. at 883.

            Here, the trial court did not make an
express determination concerning the extent of Van Es’s personal culpability
for the failure to comply.  However, there are indications in the record that
Van Es was personally aware of the ongoing discovery dispute.  For example, Van
Es’s counsel recites in his August 2005 response to the Fraziers’ second
sanctions motion that “Mr. Van Es did not receive a copy of the [May 31
sanctions order] until the second week of June.”[3] 
Similarly, in counsel’s September 2005 affidavit demonstrating the extent of
Van Es’s compliance, counsel stated, “Neither I, nor Mr. Van Es, received [the
August 18 sanctions] order until the late afternoon of September 12.”  From
these recitations, the trial court would not have abused its discretion to
infer that Van Es personally received copies of the trial court’s sanctions
orders on the dates indicated.

            In addition, the shear length of time
involved in this discovery dispute belies any assertion that Van Es had no
involvement in the discovery violations.  In Spohn Hospital, the discovery sanction which the Supreme Court set aside arose from an April 1999
request for disclosure.  See Spohn Hosp., 104 S.W.3d at 880.  The trial
court imposed the sanctions at issue (an order that certain disputed facts
would be taken as established under Rule of Civil Procedure 215.2(b)(3)) after
hearing the plaintiffs’ initial sanctions motion.  The court entered this
sanctions order in January 2000, only nine months after the plaintiffs served
the discovery request which gave rise to the sanction and without any
indication that lesser sanctions were considered.  Id. at 881.

            Here, the Fraziers served their second
request for production on Van Es in September 2003.  They filed their motion to
compel production in August 2004.  Thereafter, a series of sanctions motions
and responses were filed, and several hearings were conducted.  As a result of
these hearings, the trial court imposed several intermediate sanctions.  Van Es
also filed two original proceedings with this Court.  Finally, in February
2006, the trial court imposed death penalty sanctions.  It would simply defy
logic to conclude that Van Es had not consulted with his attorney during this
time period regarding the status of the litigation.  It would likewise defy
logic to conclude that counsel had filed two mandamus proceedings in this Court
regarding the venue and discovery disputes without consulting Van Es.  See
Am. Flood Research, 192 S.W.3d at 584 (“While there is no direct evidence
that the employees knew of the depositions and deliberately failed to attend,
in the context of an enduring attorney-client relationship, knowledge acquired
by the attorney is imputed to the client.”).

            No specific findings are required on
these issues.  Id. at 583.  From our review of the entire record, we
cannot conclude that the court abused its discretion by imposing sanctions without
conducting a more in-depth investigation of the causes of Van Es’s
non-compliance.

 

(d) Prejudice

            Van Es next argues that death penalty
sanctions were not warranted because the Fraziers failed to present evidence
that they were prejudiced by his non-compliance.  This contention likewise
relates to the “justness” of the sanctions imposed.

            “[A] just sanction must be directed
against the abuse and toward remedying the prejudice caused the innocent
party.”  Cire, 134 S.W.3d at 839 (quoting TransAmerican Nat. Gas,
811 S.W.2d at 917).  However, no “specific findings” are required on this
issue, and our review extends to the entire record and is not limited to
“evidence” offered at a hearing.  See Am. Flood Research, 192 S.W.3d at
583.

            Here, the discovery at issue was
relevant to the Fraziers’ claims that Van Es operated his dairy in violation of
state law and that the manner in which he operated the dairy, particularly his
handling of bovine waste, caused damage to their property.  The sanctions
imposed were directed against Van Es’s refusal to comply with the Fraziers’
discovery requests and toward remedying the prejudice the Fraziers would suffer
if they were forced to prosecute their claims at trial without full disclosure
of the relevant documentary evidence.  See HRN, Inc. v. Shell Oil Co.,
102 S.W.3d 205, 218 (Tex. App.—Houston [14th Dist.] 2003), rev’d on other
grounds, 144 S.W.3d 429 (Tex. 2004); see also Cire, 134 S.W.3d at
842-43; Adams v. Allstate County Mut. Ins. Co., 199 S.W.3d 509, 513
(Tex. App.—Houston [1st Dist.] 2006, pet. denied); In re J.D.N., 183
S.W.3d 128, 132 (Tex. App.—Dallas 2006, no pet.).

            Thus, no abuse of discretion is shown
by any failure of the Fraziers to proffer “evidence” of the manner in which
they were prejudiced by Van Es’s failure to comply with their discovery
requests.

(3) Consideration of Lesser Sanctions

            Finally, Van Es argues that death
penalty sanctions were not warranted because the trial court failed to consider
lesser sanctions.  However, the record directly belies this assertion.

            First, the court imposed a monetary
sanction on Van Es and his counsel in May 2005 because of their failure to
comply.  Second, the court imposed an additional monetary sanction in August
2005.  See Cire, 134 S.W.3d at 840 (citing TransAmerican Nat. Gas,
811 S.W.2d at 918).  In both orders, the court required Van Es to appear for
deposition by a date certain.  Id.  The court’s August sanctions order
also warned Van Es that failure to comply would result in the striking of his
pleadings.  See HRN, 102 S.W.3d at 218 (such a warning is, in itself, a
lesser sanction).  Finally, several months after these lesser sanctions had
failed to accomplish their primary objective (i.e., Van Es’s compliance
with the Fraziers’ discovery requests), the court imposed death penalty
sanctions.  Thus, the record affirmatively demonstrates that the trial court
attempted to achieve compliance by the imposition of lesser sanctions.

(4) Summary

            The record provides ample support for
the trial court’s decision to impose death penalty sanctions.  Van Es
persistently failed to comply with the Fraziers’ legitimate discovery requests. 
The court attempted several lesser sanctions which failed to effectuate
compliance.  Thus, the court was justified in assuming that Van Es’s defenses
lacked merit.  See Hernandez v. Mid-Loop, Inc., 170 S.W.3d 138, 144
(Tex. App.—San Antonio 2005, no pet.); Chasewood Oaks Condominiums
Homeowners Ass’n v. Amatek Holdings, Inc., 977 S.W.2d 840, 845 (Tex.
App.—Fort Worth 1998, pet. denied).  For these reasons, no abuse of discretion
is shown, and we overrule Van Es’s first issue.

Attorney’s Fees

            Van Es contends in his second issue
that the court’s award of attorney’s fees is erroneous because the Fraziers did
not request attorney’s fees in their summary judgment motion, there is no
contractual or statutory basis for the award, and there is no evidence to
support the award.  The Fraziers respond that Van Es has not preserved this
issue for appellate review and that the record contains sufficient evidence to
support the award.

            Regarding preservation of error, Rule
of Appellate Procedure 33.1(d) provides that a no-evidence or factual
insufficiency complaint “may be made for the first time on appeal” in a nonjury
case.  Tex. R. App. P. 33.1(d). 
Moreover, the judgment in this case was effectively a default judgment because
Van Es’s pleadings were struck and he was prohibited from presenting evidence. 
In this situation, no-evidence and factual insufficiency complaints may
likewise be made for the first time on appeal.  See Argyle Mech., Inc. v.
Unigus Steel, Inc., 156 S.W.3d 685, 687 & n.1 (Tex. App.—Dallas 2005,
no pet.).

            The Fraziers filed a traditional
summary judgment motion in which they alleged that they were entitled to
judgment as a matter of law on their claims that Van Es committed actionable
trespasses on their property, that his conduct created a nuisance, and that his
negligent acts caused them to suffer damages.  The Fraziers did not seek attorney’s
fees in this summary judgment motion, and they did not present any summary
judgment evidence to support an award of attorney’s fees.  Nevertheless, the
court awarded attorney’s fees to the Fraziers in the partial summary judgment.[4]

            To prevail on a traditional summary
judgment motion, a plaintiff-movant must conclusively establish each element of
its claim.  Brazos Valley Community Action Agency v. Robison, 900 S.W.2d
843, 845 (Tex. App.—Corpus Christi 1995, writ denied); Safeco Ins. Co. v.
Gaubert, 829 S.W.2d 274, 278 (Tex. App.—Dallas 1992, writ denied); cf.
Davis v. City of Grapevine, 188 S.W.3d 748, 755 (Tex. App.—Fort Worth 2006,
pet. denied) (defendant-movant must conclusively establish each element of its
affirmative defense to prevail on traditional summary judgment motion).  The
plaintiff-movant satisfies this burden if it produces sufficient evidence to
support an instructed verdict at trial.  Brazos Valley Community Action
Agency, 900 S.W.2d at 845.  Stated another way, the plaintiff-movant must
produce summary judgment evidence which establishes each element of its claim
as a matter of law.  See Davis, 188 S.W.3d at 755.

            Here, the Fraziers presented no
summary-judgment evidence which would support an award of attorney’s fees. 
Thus, we sustain Van Es’s second issue.[5]

Exemplary Damages

            Van Es contends in his third issue
that there is no evidence to support the award of exemplary damages.[6] 
Because an entitlement to exemplary damages must be established by clear and
convincing evidence, an elevated standard of review applies.  Sw. Bell Tel.
Co. v. Garza, 164 S.W.3d 607, 627 (Tex. 2004).

            In a legal sufficiency review, a court
should look at all the evidence in the light most favorable to the finding to
determine whether a reasonable trier of fact could have formed a firm belief or
conviction that its finding was true.  To give appropriate deference to the
factfinder’s conclusions and the role of a court conducting a legal sufficiency
review, looking at the evidence in the light most favorable to the judgment
means that a reviewing court must assume that the factfinder resolved disputed
facts in favor of its finding if a reasonable factfinder could do so.  A
corollary to this requirement is that a court should disregard all evidence
that a reasonable factfinder could have disbelieved or found to have been
incredible.  This does not mean that a court must disregard all evidence that
does not support the finding.  Disregarding undisputed facts that do not
support the finding could skew the analysis of whether there is clear and
convincing evidence.  

 

            If, after conducting its legal
sufficiency review of the record evidence, a court determines that no
reasonable factfinder could form a firm belief or conviction that the matter
that must be proven is true, then that court must conclude that the evidence is
legally insufficient.

 

Id.
(quoting In re J.F.C., 96 S.W.3d 256, 266 (Tex. 2002)).

            Exemplary damages may be recovered if
the plaintiff establishes by clear and convincing evidence that the defendant acted
with fraud, malice, or gross negligence.  See Tex. Civ. Prac.
& Rem. Code Ann. § 41.003(a) (Vernon Supp. 2006).  Here, the
Fraziers allege in their supplemental petition that Van Es acted with malice
and with gross negligence.[7] 
Section 41.001(11) of the Civil Practice and Remedies Code defines “gross
negligence” as an act or omission:

            (A) which when viewed objectively from
the standpoint of the actor at the time of its occurrence involves an extreme
degree of risk, considering the probability and magnitude of the potential harm
to others;  and

 

            (B) of which the actor has actual,
subjective awareness of the risk involved, but nevertheless proceeds with
conscious indifference to the rights, safety, or welfare of others.

            

Tex. Civ. Prac. &
Rem. Code Ann. § 41.001(11) (Vernon Supp. 2006).  The threshold issue of whether a plaintiff is entitled to exemplary
damages in any amount rests on the existence of clear and convincing evidence
to support a finding of fraud, malice, or gross negligence as those terms are
defined by section 41.001.  See Dillard Dep’t Stores, Inc. v. Silva, 148
S.W.3d 370, 372-73 (Tex. 2004).

            At the hearing on exemplary damages,
the court took judicial notice of the pleadings and evidence on file in the
case, including particularly the summary judgment evidence.  The summary record
contains evidence that Van Es incorrectly designated the Fraziers’ property as
lying within his dairy’s “waste management field” in documents filed with TCEQ;
that he improperly disposed of the bovine waste from his dairy in a manner
which allowed it to regularly enter the Fraziers’ property in large quantities;
that the flow of bovine waste onto the Fraziers’ property has rendered the
property virtually uninhabitable; that he acknowledged to Danny Frazier that he
was engaging in this conduct; and that he acknowledged that the manner in which
he was disposing of bovine waste was contrary to the law.

            Viewed in the light most favorable to
the judgment, the Fraziers presented clear and convincing evidence that Van Es
disposed of bovine waste created on his dairy in a manner which created “an
extreme degree of risk” to the Fraziers and their property.  See Tex. Civ. Prac. & Rem. Code Ann. § 41.001(11)(A). 
And Van Es’s statements to Danny Frazier constitute clear and convincing
evidence that Van Es (1) had actual awareness of this risk but (2) nevertheless
proceeded with conscious indifference to the Fraziers’ rights.  Id. § 41.001(11)(B).

            Because the Fraziers presented clear
and convincing evidence which supports the award of exemplary damages, we
overrule Van Es’s third issue.

Conclusion

We affirm the trial court’s findings of liability
and its award of exemplary damages.  We reverse that portion of the judgment
awarding attorney’s fees to the Fraziers and remand this cause to the trial
court for further proceedings consistent with this opinion.

 

FELIPE REYNA

Justice

Before Chief Justice
Gray,

Justice
Vance, and

Justice
Reyna

Affirmed in part, Reversed

            and Remanded
in part

Opinion delivered and
filed July 5, 2007

[CV06]









[1]           Van Es actually initiated this mandamus proceeding
in September by filing a motion for an extension of time to file his mandamus
petition.  He did not file the petition until November.





[2]
          The order was signed “this ___ day of August, 2005” and entered on
August 18, 2005.





[3]
              In this response, Van Es’s
counsel was careful to distinguish between “Mr. Van Es” and “Counsel for Mr.
Van Es.”





[4]
              This is borne out by the fact
that the partial summary judgment awards attorney’s fees to the Fraziers and,
at the “final hearing,” the Fraziers’ counsel advised the trial court that the
only remaining issue was exemplary damages.

 





[5]
              Because the attorney’s fees
were awarded in the partial summary judgment and because the parties did not
file competing summary-judgment motions, we will reverse and remand on the
issue of attorney’s fees.  See Morales v. Morales, 195 S.W.3d 188,
192-93 (Tex. App.—San Antonio 2006, pet. denied).





[6]
              As with Van Es’s challenge to
the award of attorney’s fees, his contention that there is no evidence or
factually insufficient evidence to support the award of exemplary damages “may
be made for the first time on appeal.”  See Tex. R. App. P. 33.1(d).





[7]
              The Fraziers specifically
allege that Van Es acted with “gross negligence.”  They also allege that he
“acted intentionally and will callous disregard for the rights of others.” 
This latter allegation is tantamount to an allegation of malice.  See Tex. Civ. Prac. & Rem. Code Ann. § 41.001(7)
(Vernon Supp. 2006) (“‘Malice’ means a specific intent by the defendant to
cause substantial injury or harm to the claimant.”).